## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PAUL A. HEBERT,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  11-1200** |
| **BP AMERICA, INC., ET AL.,**<br>    **Defendants** | **SECTION: "E" (4)** |

## <u>ORDER AND REASONS</u>

Before the Court are four motions by Defendants BP Exploration and Production Inc., BP America Production Company, and BP p.l.c. (referred to collectively as "BP"). BP has filed a *Daubert* Motion to Exclude the Causation Opinions of Plaintiff's Expert, Patricia Williams, Ph.D.;[1] a *Daubert* Motion to Exclude the Causation Opinions of Plaintiff's Expert, Susan Andrews, Ph.D.;[2] a *Daubert* Motion to Exclude the Causation Opinions of Plaintiff's Expert, C. Ann Conn, M.D.;[3] and a Motion for Summary Judgment.[4] Plaintiff, Paul Hebert, has filed responses in opposition to each motion,[5] and BP has replied.[6]

For the reasons that follow: BP's motion to exclude Dr. Williams' opinions is **GRANTED;** BP's motion to exclude Dr. Conn's opinions is **DENIED AS MOOT**; BP's motion to exclude Dr. Andrews' opinions is **DENIED AS MOOT**; and BP's motion for summary judgment is **GRANTED**.

---

[1] R. Doc. 56.
[2] R. Doc. 57
[3] R. Doc. 59.
[4] R. Doc. 58.
[5] R. Docs. 61, 62, 63, 64.
[6] R. Docs. 73, 75, 77, 79.

## BACKGROUND

This is a "B3" case arising out of the 2010 Deepwater Horizon oil spill in the Gulf of Mexico. B3 cases involve "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g., dispersant)."[7]

Plaintiff alleges that from June to November 2010, he was the lead operator of a container "in the immediate vicinity and within eyesight" of the Deepwater Horizon and the oil spill.[8] According to Plaintiff, "[h]e was given no protective equipment to wear at any time," and contaminated air and water entering the ship made the environment "like a chemical vortex all over the ship."[9] Plaintiff alleges he "experience[d] deep fatigue, cold sweats, headaches, gastrointestinal issues, loss of weight and tremors," and "difficulty with balance, finding words, [and] memory lapses" during his time on the ship and after.[10] He has testified "that he had to stop working because of memory and cognitive problems that worsened significantly."[11]

Today, Plaintiff is under care "for his continued symptoms consistent with chronic toxic encephalopathy [CTE]."[12] Plaintiff first sued BP in 2011 for its alleged role in causing his health conditions;[13] after this case was severed from the multidistrict litigation,[14] Plaintiff filed two amended complaints in 2021,[15] and the parties conducted discovery,

---

[7] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *10 (E.D. La. Apr. 1, 2021) (Barbier, J.).
[8] R. Doc. 64 at p. 1. Defendants note that "[a]t [his] deposition, [Plaintiff] testified the [ship] was on standby for the entire time he was assigned to it while it was in the Gulf of Mexico and it never actually performed cleanup operations related" to the spill response. R. Doc. 58-1 at p. 3.
[9] R. Doc. 64 at p. 2 .
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *See* R. Doc. 1.
[14] R. Doc. 8.
[15] R. Docs. 12, 26.

including the production of expert reports.[16]

BP, through its *Daubert* motions, seeks to exclude the opinions of three of Plaintiff's experts: Dr. Patricia Williams, who offers general and specific causation opinions;[17] Dr. C. Ann Conn, who offers specific causation opinions;[18] and Dr. Susan Andrews, who offers opinions on Plaintiff's alleged cognitive disorders.[19] BP's motion for summary judgment argues that because Plaintiff's causation opinions—through Williams and Conn—should be excluded, Plaintiff cannot prove general causation, a necessary element of his claims, and BP is entitled to judgment in its favor as a matter of law.

## LEGAL STANDARDS

### I.   Motion *in Limine* Standard

A district court has discretion to admit or exclude expert opinions and testimony under the Federal Rules of Evidence.[20] Indeed, the Supreme Court held Rule 702 requires a district court to act as a gatekeeper to ensure "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[21] Rule 702 governs the admissibility of expert testimony,[22] providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts.

---

[16] *See* R. Docs. 45, 46.
[17] R. Doc. 56.
[18] R. Doc. 59.
[19] R. Doc. 57.
[20] *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).
[21] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993)
[22] *Id.*; *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702."[23] The burden of proof rests with the party seeking to present the challenged expert testimony—namely, a preponderance of the evidence standard.[24] Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment "to determine whether the expert testimony is both reliable and relevant."[25]

When assessing the reliability of expert testimony, courts assess a number of non-exhaustive factors, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community.[26] The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant."[27] "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702."[28]

The proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also in the sense that the expert's

---

[23] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).
[24] *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016); *see also Daubert*, 509 U.S. at 592 n.10.
[25] *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999).
[26] *Burleson*, 393 F.3d at 584.
[27] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)).
[28] *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

proposed opinion would assist the trier of fact to understand or determine a fact in issue."[29] The "helpfulness" prong is concerned with ensuring the expert testimony is not only scientifically reliable but also "relevant to the task at hand."[30]

## II.    Motion for Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] "An issue is material if its resolution could affect the outcome of the action."[32] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[33] All reasonable inferences are drawn in favor of the non-moving party.[34] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[35]

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material fact may be presented in a form that would not, in itself, be admissible at trial."[36]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material

---

[29] *Bocanegra v. Vicmar Servs.*, Inc., 320 F.3d 581, 584 (5th Cir. 2003).

[30] *Daubert*, 509 U.S. at 597.

[31] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[32] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[33] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[34] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[35] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

[36] *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).

fact."[37]   To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[38] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[39]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[40] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[41] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[42] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary

---

[37] *Celotex*, 477 U.S. at 323.

[38] *Id.* at 331.

[39] *Id.* at 322–24.

[40] *Id.* at 331–32 (Brennan, J., dissenting).

[41] *See id.* at 332.

[42] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[43]

## LAW AND ANALYSIS

Because the exclusion of Williams' general causation opinions leaves Plaintiff without evidence to provide the general causation element of his claim, BP is entitled to summary judgment in its favor.

### I.     The Court excludes the general causation opinions of Williams.[44]

BP's *Daubert* motion regarding Williams notes, correctly, that she has repeatedly "served as an expert in [Deepwater Horizon] litigation . . . including three recent cases where her reports were nearly identical to the report she issued for [Plaintiff]."[45] The flaws in those reports exist in the report submitted in this case. The Court will exclude Williams' opinions.

In the Fifth Circuit, a *minimum* requirement in a toxic tort case such as this is that an expert identity the level of exposure to a certain substance necessary to cause the Plaintiff's alleged condition in the general population.[46] As she has done in prior cases,

---

[43] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[44] Because Williams' general causation opinions are excluded, her specific causation opinions will be excluded, too. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir.2007) ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.") (citation omitted).

[45] R. Doc. 56-1 at p. 1 (citing *Griffin v. BP Expl. & Prod*, No. 17-3244, 2023 WL 183894 (E.D. La. Jan. 13, 2023) (Ashe, J.), *Martin v. BP Expl. & Prod.*, No. 17-3249, 2023 WL 183905 (E.D. La. Jan. 13, 2023) (Ashe, J.), and *Simon v. Grand Isle Shipyard, Inc*., No. 11-1432, 2023 WL 2430048 (E.D. La. Mar. 9, 2023) (Africk, J.).

[46] *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) ((noting that evidence of threshold dose is the first of the two "minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case); *see also McGill v. BP Expl. & Prod.*, 830 Fed. App'x 430, 435 (5th Cir. 2020); *Harrison v. BP Expl. & Prod.*, No. 17-4346, 2022 WL 2390733 (E.D. La. June 30, 2022) (Morgan, J.) (excluding expert for failing to verify the

Williams does not "identify the dose of arsenic necessary to cause toxic encephalopathy" like that allegedly suffered by Plaintiff.[47] In recent cases, Judges Ashe and Africk of this district discussed the shortcomings of Williams' general causation opinions.

In *Griffin v. BP Exploration and Production, Inc.*,[48] Judge Ashe wrote that "Williams' general causation opinion must be excluded" because she "fail[e]d to identify the dose of exposure (*i.e.,* the exposure to a certain level of a certain substance for a certain period of time) to arsenic necessary to cause the development of CTE in the general population."[49] Reasoning that "[b]ecause identification of the harmful level of exposure to a chemical is one of the 'minimal facts necessary to sustain the plaintiff's burden in a toxic tort case,'" and finding "Williams [did] not provide[] this information with respect to the general population," Judge Ashe ruled "her report [was] unreliable and her general causation opinions inadmissible."[50]

Similarly, in *Simon v. Grand Isle Shipyard, Inc.*,[51] Judge Africk found that William's report "faile[ed] to establish the harmful dose," because it did not "establish the *duration* of exposure necessary to cause adverse health effects."[52] Specifically, Judge Africk noted that the study relied on by Williams to purportedly establish the dose of arsenic that can cause CTE, "the Zierold study,"[53] "examined effects of arsenic exposure through *drinking water*" when the plaintiff's alleged exposure was through other

---

plaintiff's diagnoses and failing to identify a harmful dose of exposure necessary to cause the plaintiff's condition); R. Doc. 56-1 at p. 11. N.31 (collecting E.D. La. cases ruling the same).

[47] R. Doc. 56-1 at p. 11.

[48] 2023 WL 183894 (E.D. La. Jan. 13, 2023).

[49] *Id.* at *4.

[50] *Griffin*, 2023 WL 183894, at *5 (E.D. La. Jan. 13, 2023) (quoting *Allen*, 102 F.3d at 199).

[51] 2023 WL 2430048, at *5 (E.D. La. Mar. 9, 2023)

[52] *Id.* at *4 (emphasis in original).

[53] *Id.* at *5. The full citation is KM. Zierold et al., *Prevalence of Chronic Diseases in Adults Exposed to Arsenic-Contaminated Drinking Water*, 94 Am. J. Pub. Health 1936 (2004).

means.[54] Judge Africk, referencing prior rulings by Judge Ashe, noted that the plaintiff did not "attempt to distinguish" the issues with Williams' report in *Simon* from those flaws identified by Judge Ashe.[55]

Yet again, Williams' report and opinions in this case fail to identify the dose of arsenic that can cause CTE in the general population. The pleadings make clear that nothing about her opinions has changed that would convince this Court to rule differently than Judges Ashe and Africk. BP moves to exclude Williams' opinion in this case because "without identifying a harmful dose, her report does not satisfy Fifth Circuit requirements of an admissible general causation opinion."[56] In response, Plaintiff points first to the work Williams did to analyze *specific causation* as to Plaintiff's injuries, calculating the "exposure dose of Paul Hebert,"[57] and then, heeding no warning in Judge Africk's opinion on the same, points to the "Zierold study" as establishing the "lowest level of exposure to arsenic that would cause CTE."[58] Yet the Zierold study concerns arsenic exposure through drinking water, as Judge Africk noted and Williams acknowledges in her report.[59] In this case, however, Plaintiff alleges his toxic exposure was due to the "chemical vortex" on the ship created through contaminated air and water entering the vessel—he does not claim drinking contaminated Gulf water was the cause of his injuries.[60]

Once more, Williams' report fails to establish the dose of arsenic exposure that would cause CTE in the general population. "Without information concerning this theoretical cause-effect possibility in the general population, there is no way to determine

---

[54] *Id.* (emphasis added).
[55] *Id.* at *4.
[56] R. Doc. 56-1 at p. 12.
[57] R. Doc. 61 at p. 11.
[58] R. Doc. 61 at p. 14.
[59] R. Doc. 56-2 at p. 85.
[60] R. Doc. 64 at p. 1.

if the specific dose of exposure experienced by any plaintiff . . . was sufficient to cause harm."[61] Accordingly, the Court grants BP's *Daubert* motion as to Williams and excludes her opinions as unreliable.

## II.   The Court denies as moot BP's *Daubert* motion to exclude Conn's specific causation opinions.

BP has filed a *Daubert* motion to exclude the opinions of C. Ann Conn, M.D. BP describes her testimony as providing specific causation opinions, namely, "conclud[ing] that [Plaintiff's] exposure to arsenic during the *Deepwater Horizon* spill response caused him to suffer chronic solvent-induced toxic encephalopathy."[62] BP argues Conn "makes fundamental errors in her specific causation analysis which render her report unreliable and inadmissible."[63] In opposition, Plaintiff argues Conn is well-qualified and followed all applicable standards and practices in the course of her analysis.[64]

Conn does not offer her own analysis of general causation; she relies on the Williams report.[65] An opinion on specific causation requires the expert to establish that a plaintiff's exposure to a substance exceeded the dose known to cause the plaintiff's type of harm.[66] Accordingly, because the Williams report and opinions have been excluded, any opinions by Conn based thereon also must be excluded as irrelevant.[67]

Because Plaintiff's claims cannot succeed without general causation opinions, BP's *Daubert* motion as to Conn's specific causation opinions is denied as moot.

---

[61] *Griffin*, 2023 WL 183894, at *4 (E.D. La. Jan. 13, 2023).
[62] R. Doc. 59-1 at p. 1. *See also id.* at p. 2 ("Dr. Conn's reports are unusual in the B3 docket because she only provides an opinion on specific causation, not general causation."
[63] R. Doc. 59-1 at p. 2.
[64] *See generally* R. Doc. 62.
[65] *Id.* at p. 7.
[66] *See Seaman v. Seacor Marine LLC*, 564 F.Supp.2d 598, 603–04 (E.D. La.2008) (Zainey, J.), *aff'd* Fed. Appx. 721 (5th Cir. 2009).
[67] *Knight*, 482 F.3d 347, 351 (5th Cir.2007) ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.") (citation omitted).

### III.   The Court denies the *Daubert* motion regarding Andrews' opinions as moot.

BP also seeks to exclude the opinions of Susan Andrews, Ph.D.,[68] a neuropsychologist who would testify about the extent of damage Plaintiff's cognitive functions and his related disorders.[69] As discussed above, the Court excludes the opinions of Plaintiff's general causation expert, and, as a result, the Court will grant BP's motion for summary judgment. Because Plaintiff's claims cannot succeed without general causation opinions, the motion to exclude Andrews' opinions is denied as moot.

### IV.   The Court grants BP's motion for summary judgment.

"B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response" to the oil spill[70] The plaintiff has the burden of establishing general causation and specific causation. "'First, the district court must determine whether there is general causation. Second, if it concludes . . . there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence.'"[71] "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."[72]

"Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case."[73] Introduction of these facts, through

---

[68] R Doc. 57.
[69] *See generally* R. Doc. 63.
[70] Medical Settlement Section VIII(G)(3)a); *see also In re Oil Spill*, 2021 WL 6053613, at *10; *accord Perkins v. BP Expl. & Prod.., Inc.*, No. 17-4467, 2022 WL 972276, at *2 (E.D. La. March 31, 2022).
[71] *Seaman*, 326 F. App'x at 722 (quoting *Knight*, 482 F.3d at 351).
[72] *Id.*
[73] *Allen*, 102 F.3d at 199.

scientific knowledge, is a firm requirement: "In a toxic tort suit such as this one, the plaintiff *must* present admissible expert opinions to establish general causation as well as specific causation."[74]

Because Williams' general causation opinions are excluded, Plaintiff cannot prove a required element of his claims against BP. Courts have routinely granted summary judgment in favor of BP where a B3 plaintiff has failed to introduce expert opinions.[75] This Court will do the same.

**CONCLUSION**

For the foregoing reasons;

**IT IS ORDERED** that BP's Daubert Motion to Exclude the Causation Opinions of Plaintiff's Expert, Patricia Williams, Ph.D., is **GRANTED**.

**IT IS FURTHER ORDERED t**hat BP's *Daubert* Motion to Exclude the Causation Opinions of Plaintiff's Expert, C. Ann Conn, M.D. is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that BP's *Daubert* Motion to Exclude the Causation Opinions of Plaintiff's Expert, Susan Andrews, Ph.D. is **DENIED AS MOOT.**

**IT IS FURTHER** ORDERED that **BP's Motion for Summary Judgment is GRANTED.** The Court will issue a separate judgment in favor of BP Exploration and Production Inc., BP America Production Company, and BP p.l.c. and against Plaintiff Paul Hebert as to all claims.

**New Orleans, Louisiana, this 26th day of February, 2024.**

_Susie Morgan_

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[74] *Seaman v. Seacor Marine LLC*, 564 F. Supp. 2d 598, 600 (E.D. La. 2008) (emphasis added), *aff'd* 326 F. Appx. 721 (5th Cir. 2009).
[75] *See* R. Doc. 58-1 at p. 10 n.24 (collecting cases).